FILED

**NOT FOR PUBLICATION**

SEP 19 2013

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | No. 11-17270 |
| Plaintiff-Appellant, | D.C. No. 2:08-cv-00620-PMP-GWF |
| v. | |
| PUBLISHERS BUSINESS SERVICES, INC.; ED DANTUMA ENTERPRISES, INC., DBA Publishers Business Services, DBA Publishers Direct Services; PERSIS ANN DANTUMA; EDWARD FRED DANTUMA; BRENDA DANTUMA SCHANG; DRIES DANTUMA; DIRK DANTUMA; JEFFREY DANTUMA, | MEMORANDUM[*] |
| Defendants-Appellees. | |

On Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued May 15, 2013
Submitted September 19, 2013
San Francisco, California

Before:     CLIFTON and BEA, Circuit Judges, and KORMAN,

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Senior District Judge.[**]

The Federal Trade Commission ("FTC") sued Publishers Business Services, Inc.; Ed Dantuma Enterprises, Inc. (referred to collectively as "PBS"); and six of its individual corporate officers and managers, all of whom are members of the same family, alleging widespread deceptive and abusive telemarketing practices. The district court granted the FTC's motion for summary judgment and entered a permanent injunction. *FTC v. Publishers Bus. Servs., Inc.*, 821 F. Supp. 2d 1205, 1227–28 (D. Nev. 2010). After an evidentiary hearing, the district court awarded the FTC equitable damages of $191,219.00. *See FTC v. Publishers Bus. Servs.*, No. 08-CV-00620, 2011 WL 7462205, at *2 (D. Nev. July 25, 2011). Moreover, the district court held that only two individual defendants were liable for monetary relief, though each was subject to the permanent injunction. *Id.* Only the FTC appeals, arguing that damages should have been measured by defendants' total gross receipts within the relevant time period ($34.4 million) and that all individual defendants should have been held jointly and severally liable for monetary relief.

We "review[] a district court's grant of equitable relief under the FTC Act only for abuse of discretion or [for] the erroneous application of legal principles." *FTC v.*

---

[**] The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

*Network Servs. Depot, Inc.*, 617 F.3d 1127, 1141 (9th Cir. 2010). We hold that the district court abused its discretion with respect to the amount of the award and the individual liability of three of the defendants. We vacate and remand for further proceedings.

### I. The Measure of Damages

The district court applied an incorrect legal standard when it focused on the defendants' gain rather than the loss to the consumers. "[C]ourts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits." *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009).

In rejecting this calculation, the district court relied on two cases: *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006), and *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) (per curiam). This was improper. In *Verity*, the Second Circuit held that the baseline for an equitable monetary award under the FTC Act is the defendant's unjust benefits, not the consumers' losses. We have, however, held that the FTC Act permits restitution measured by the loss to consumers. *See Stefanchik*, 559 F.3d at 931–32 (9th Cir. 2009).

*Figgie*, 994 F.2d at 595, is also distinguishable. In *Figgie*, as here, the violation arose under § 5 of the FTC Act. The remedy in that case, however, was governed by § 19(b) of the FTC Act, which explicitly limits recoverable monies to those necessary

3

to provide "redress . . . to consumers" and prohibits the imposition of other types of damages. *Id.* at 607 (quoting 15 U.S.C. § 57b(b)). In this case, recovery is authorized under § 13(b), which contains no such limitation and which permits awards that may even be "greater than the defendant's unjust enrichment." *Stefanchik*, 559 F.3d at 931; *accord FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469–70 (11th Cir. 1996) (noting that § 13(b) does not have the same limitations as § 19 and distinguishing *Figgie* on that basis); *Febre*, 128 F.3d at 537 (7th Cir. 1997) (same).

In addition to its reliance on *Verity* and *Figgie*, the district court also erred when it relied on the fact that, while consumer refunds might be an appropriate remedy, "the evidence adduced demonstrates that it is either impossible or impracticable to locate and reimburse those individual customers." *Publishers Bus. Servs.*, 2011 WL 7462205 at *2 (citing *FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)). Attributing damages to individual consumers and returning value to them is not required for a § 13(b) disgorgement remedy and *Pantron I* so held. We there held that, if it is "impossible or impracticable to locate and reimburse all of the consumers who have been injured by [the defendant's] misrepresentations, [the district court] may order some other remedy which requires [the defendant] to disgorge its unjust enrichment. Such an alternative remedy should provide direct benefits to consumers to the extent possible, however." *Pantron I*, 33 F.3d at 1103 n.34; *see also Gem*

4

*Merch. Corp.*, 87 F.3d at 470 ("[B]ecause it is not always possible to distribute the money to the victims of defendant's wrongdoing, a court may order the funds paid to the United States Treasury.").

The district court also erred when it relied on the damage calculation contained in PBS's expert report by Dr. Gregory Duncan. That report was premised first on the assumption that most consumers heard all the terms of the subscription so that they were not misled by the telemarketing solicitation. The fraud, however, was not simply the failure to disclose all pertinent terms. Instead, the defendants were found in violation of § 5 by the misrepresentations that launched the process, among other reasons. Indeed, in granting summary judgment, the district court held that, "[a]lbeit true that by the end of the verification call PBS has informed the consumer of all the terms of the agreement," the net effect of PBS's sales tactics was misleading. *Publishers Bus. Servs.*, 821 F. Supp. 2d at 1224. Thus, the deception was "self-evident." *Id.* at 1225.

Dr. Duncan's calculation was also premised on the assumption that the subscriptions were not valueless. This assumption is not relevant, even if true. "Courts have previously rejected the contention 'that restitution is available only when the goods purchased are essentially worthless.'" *Figgie*, 994 F.2d at 606 (quoting *FTC v. Int'l Diamond Corp.*, No. 82-0878, 1983 WL 1851, at *5 (N.D. Cal. July 12,

5

1983)); *see also FTC v. Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004) (holding, in similar magazine subscription sales scheme, no need to offset gross receipts "by the value of the magazines the consumers received"). This is particularly true where the injury to consumers arises out of misrepresentations made in the sales process, which lead to a "tainted purchasing decision." *Figgie*, 994 F.2d at 606. "The fraud in the selling, not in the value of the thing sold, is what entitles consumers . . . to full refunds." *Id.*

The district court's calculation of damages is vacated. On remand, the district court should base its calculation on the injury to the consumers, not on the net revenues received by defendants. That does not mean that the district court must accept the calculation proposed by the FTC. PBS has argued, for example, that a customer who renewed subscriptions necessarily knew the actual terms of the transaction at the time of renewal. A similar argument was made regarding customers who added on to a subscription order. The district court may consider these and other arguments in determining the appropriate amount of damages to be awarded.

**II. Individual Liability**

To be individually liable for equitable restitution under the FTC Act, the individual must have "participated directly in the deceptive acts or had the authority to control them," *Stefanchik*, 559 F.3d at 931 (emphasis omitted), and "had *knowledge*

6

that the corporation or one of its agents engaged in dishonest or fraudulent conduct, that the misrepresentations were the type upon which a reasonable and prudent person would rely, and that consumer injury resulted." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138 (9th Cir. 2010) (emphasis in *Network Services Depot*). The FTC may establish knowledge by showing that an individual "had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id.* at 1138 (citation omitted) (alteration in *Network Services Depot*).

The district court's finding that Dirk, Brenda and Jeff Dantuma were not individually liable was an abuse of discretion. They had knowledge, and, by virtue of their individual roles, had some degree of either control or direct participation in the misrepresentations. Indeed, by way of example, Dirk filed a sworn declaration stating that he was "familiar with the business operations, policies and procedures of [Ed Dantuma Enterprises] and Publishers Business Services," and specifically attested to PBS's alleged efforts to "comply with the [Telemarketing Sales Rule], the FTC Act, and debt collection laws."

On the other hand, the FTC did not present any evidence beyond Persis Dantuma's corporate titles as to her knowledge and declined even to cross-examine

her at the hearing on damages. Under these circumstances, it was not an abuse of discretion to hold that she was not individually liable and the district court's order is affirmed as to her.

We therefore remand this case for further proceedings. On remand, the district court is directed to recalculate the damage award, and to hold Dirk, Brenda, and Jeff Dantuma individually liable, in addition to Edward and Dries Dantuma.

**AFFIRMED in part, VACATED in part, and REMANDED.**